ELIZABETH H. PUTNAM, Respondent, *v.* CORNELIA M. STEWART, Appellant.

Where, for the purpose of conveying the lessor's interest in real estate held under a durable lease, an assignment was indorsed upon the lease, which was referred to for a description of the premises, and of the interest conveyed, and which had been duly recorded, and where the county clerk to whom the conveyance had been delivered for record, recorded simply the assignment, accompanying the record with a memorandum stating the book and page where the lease was recorded, — *Held*, that this was a sufficient compliance with the provisions of the Recording Act; that the memorandum was a legitimate exercise of the powers conferred upon the recording officer; that by it and the usual clerk's certificate attached the record of the lease was made part of the record of the conveyance; and that, therefore, the conveyance could be proved by the records.

R., plaintiff's devisor, and W. owned certain lands known as lots 36 and 52 as joint tenants; they executed a durable lease of a portion thereof, and conveyed a portion to P. Thereafter W. executed to R. a conveyance of his interest in the lease and the land therein described. R. at the

same time executed and delivered a conveyance to W. of an equal in-
dividual moiety of said lots, describing them by metes and bounds, with
the qualification that the same were conveyed subject to the conveyance
to P. and to the durable lease, "which conveyances," the description
stated, "and the lands therein conveyed, are excepted and reserved from
this conveyance." *Held,* that conceding the qualification to be inopera-
tive as an exception, it was significant as bearing upon the intent of the
parties, and with the other circumstances showed clearly the intent was
to vest in R. the exclusive title to the premises covered by the lease, and
in W. title to the residue.

(Argued October 31, 1884; decided November 25, 1884.)

Appeal from judgment of the General Term of the Supreme
Court, in the third judicial department, entered upon an order
made at the May term, 1882, which affirmed a judgment in
favor of plaintiff, entered upon a decision of the court on trial
at Special Term.

The nature of the action and the material facts are stated in
the opinion.

*Charles S. Lester* for appellant. The memorandum, made
by Williams in deed book No. 54 in relation to an assignment
there recorded, was incompetent evidence, and its reception
and the proof of a custom or habit of the witness Horton and
his clerks to make such entries was error. (*People* v. *Keyser*,
39 Barb. 587; 1 R. S. 756.) Official registers are not evidence
of any fact not required to be recorded in them. (1 Greenl.
on Ev., §§ 493, 115; *Troy & Rutland R. R. Co.* v. *Kerr*, 17
Barb. 581; *People* v. *Cook*, 14 id. 259, 288.) This entry is
not within the rule that entries by a third person in the usual
course of professional employment of acts or matters which his
duty in such business required him to do for others, and made
cotemporaneously with the transaction recorded, are admissible
to prove the fact, stated after death of the person by whom the
entry was made. (*Nichols* v. *Webb*, 8 Wheat. 337; *Ocean Bk.*
v. *Carll*, 9 Hun, 239.) The law only authorized the recording
of the paper. (*Viele* v. *Judson*, 82 N. Y. 32, 37; *Parr* v.
*Village of Greenbush*, 72 id. 463, 470.) The evidence of a
custom or usage in the clerk's office to make annotations and

commentaries in the books of record was wholly improper. (1 Greenl. on Ev., § 292; *Thompson* v. *Ashton*, 14 Johns. 316; *Hinton* v. *Locke*, 5 Hill, 437; *Beirne* v. *Dord*, 1 Seld. 95, 101; *Wheeler* v. *Newbould*, 16 N. Y. 392; *Higgins* v. *Moore*, 34 id. 417.) The fact that rent was paid to Rockwell Putnam constitutes no evidence as against the defendant of his right to receive it. (3 Greenleaf's Cruise on Real Prop. 295; 3 Blackstone, 170; *Leyon* v. *Adde*, 63 Barb. 89.) The recital in the deed of Dinnen to Brown only makes the premises subject to the lease and does not estop defendant from showing title out of R. Putnam. (2 Greenl. on Ev., § 305; *Jackson* v. *Davis*, 5 Cow. 123, 135; *Hoag* v. *Hoag*, 35 N. Y. 469; *Bloom* v. *Burdick*, 1 Hill, 30, 138.) A grantee may even dispute the title of his grantor. (*Sparrow* v. *Kingman*, 1 Comst. 242; *Hilton* v. *Bender*, 4 T. & C. 270, 272.) A deed should be most strongly construed against the grantor. (4 Cruise's Dig. 245; *Long Island R. R. Co.* v. *Conklin*, 32 Barb. 386; *Hathaway* v. *Power*, 6 Hill, 457; *Jackson* v. *Blodget*, 16 Johns. 178; *Jackson, ex dem. Butler,* v. *Gardner*, 8 id. 394, 406; *Jackson* v. *Hudson*, 3 id. 375.) If there be two clauses in a deed so totally repugnant to each other that they cannot stand together, the first shall be received and the latter rejected. (Shepherd's Touchstone, 88; 4 Cruise's Dig. 244.) Deeds and other contracts should be so construed as to give them effect and uphold them. *Ut res magis valeat quam pereat.* If an exception is repugnant to the grant it is void. (4 Kent's Com. 468; 4 Cruise's Dig. 244, note 3, 271; 3 Washburn on Real Prop. 640; *Cutler* v. *Tuffts*, 3 Pick. 272; *Craig* v. *Wells*, 1 Kern. 315; *Hill* v. *Priestly*, 52 N. Y. 635; *Ryckman* v. *Gillis*, 6 Lans. 79.)

*John R. Putnam* for respondent. The clerk had a right to make the memorandum in question, and it was an official act and part of the record, and, under the statute, evidence. (1 R. S. 756, § 1; id. 759, §§ 16, 17; id. 375, §§ 52, 63; id. 762, § 54.) The assignment being a valid conveyance, the clerk was bound to record it under the statute. (1 R. S.

756, § 1.) It would seem to be a part of his official duty to state what instrument the assignment referred to, so as to make the record intelligible, and hence his certificate in that regard was an official act. (*Hall* v. *Lauderdale,* 46 N. Y. 73; Story on Agency, § 97; *Commercial Bk.* v. *Norton,* 1 Hill, 504; *Bissell* v. *Hamblin,* 6 Duer, 512.) The memorandum being in the handwriting of a deceased clerk in the county clerk's office, made in the discharge of his duty in said office, was competent evidence under all the cases, and had the same effect as if the clerk was produced on the trial and sworn to what the memorandum stated. (*Ocean Nat. Bk.* v. *Carll,* 9 Hun, 239; *Brewster* v. *Doane,* 2 Hill, 536; *Halliday* v. *Martinet,* 20 Johns. 168; *Nat. Butchers' Bk.* v. *Degrood,* 11 J. & S. 341; *Fasson* v. *Hubbard,* 61 Barb. 548; *Gawtry* v. *Doane,* 48 id. 148; 51 N. Y. 90; *Merrill* v. *Ithaca R. R.,* 1 Wend. 586.) The conveyance from R. Putnam and wife to Washington Putnam, of the same date as the assignment, does not affect the lease or the premises in question, both being expressly excepted and reserved out of said conveyance. (*Langdon* v. *Mayor, etc.,* 6 Abb. N. C. 314; *Terrett* v. *Brooklyn Imp. Co.,* 18 Hun, 6; *Hathaway* v. *Paine,* 34 N. Y. 116.) This exception in this deed is not repugnant to the grant or equal to it and is valid. (4 Kent's Com. 468.)

RUGER, Ch. J. This action was ejectment by the landlord against his tenant for non-payment of rent. The plaintiff proved title to the premises from and after February 14, 1835, in Washington and Rockwell Putnam, a durable lease dated March 1, 1843, from the said Putnams and their respective wives to Dinnen and Clere, with a reservation of annual rent; possession by Dinnen and Clere under the lease, and also possession in several intermediate lessees and assignees under successive transfers of the interest of Dinnen and Clere to each of them in such lease, down to and including the defendant and non-payment of rent by them since 1874. The plaintiff also established the death of said Rockwell Putnam in the year

1871, and her succession as his devisee to a life interest in the premises. She also proved her succession to the undivided interest of Washington Putnam and his wife in the premises by an assignment of said lease purporting to be duly executed by them to Rockwell Putnam, October 12, 1848. This assignment was attempted to be proved by the production in evidence of the records of the county clerk's office of Saratoga county, showing a conveyance duly executed by Washington Putnam and his wife to Rockwell Putnam, whereby they assumed to grant, bargain, sell and assign to him all of their right, title and interest " of, in and to the within lease, and to the premises therein described and to the rents therein reserved." This assignment was preceded on the record by a memorandum reading as follows: " The following is indorsed on the counterpart of a lease which is recorded in deed book Y Y, page 258," and was followed by the record of an acknowledgment thereof in due form, and the certificate of the county clerk stating that " I certify the foregoing to be a true copy of the original, with the certificate of acknowlegment thereof, recorded October 16, 1848, 9 h. 20 m., A. M.

" JAMES W. HORTON, <em>Clerk</em>."

The introduction of the memorandum in question was objected to first as not containing legal evidence of the identity of the paper upon which the assignment recorded, was written, and second: That the memorandum was not made by the clerk in the performance of any official statutory duty, and was therefore mere hearsay.

Assuming for the purpose of the argument that the assignment in question was indorsed, either upon the original lease or a copy thereof, it cannot be doubted but that it showed a conveyance complete in form, and quite sufficient to convey the interest of the assignors in the property described by the paper attached.

The reference in the assignment to a paper and its contents which were therein stated to be attached or written upon, identified the thing intended to be conveyed by unmistakable

language and made that paper a component part of the instrument referring to it.

The detachment of this paper from it would render the assignment an incomplete and mutilated instrument; and a record of it as thus mutilated would fail to show the conveyance intended to be recorded.

It was undoubtedly the duty of the clerk to record the instrument delivered to him *in haec verba*, or do some act which should be its legal equivalent. Doubtless a proper course was to record the whole instrument; but the question here is whether any other course was permissible.

Proof of the lease either by the production of the record or of the original, together with that of the assignment and paper attached, whether copy, counterpart or original, would show a satisfactory title in the assignee therein named, of the interest which the assignors possessed in the subject of the conveyances. So too, if the plaintiff had produced in evidence an authenticated copy of the assignment including that of the paper on which it was written, the instrument would have been complete in form and meaning, and would have proved by legal evidence the title of the assignee to the property described.

Such a certificate we think the clerk was authorized to make from the data contained in the records; and the proof of the record was equivalent to the production of such authenticated copy.

It is made the duty of county clerks to record all conveyances of real estate situated in their respective counties, delivered to them for that purpose, in the books of record required to be kept in each county for such purposes. (3 R. S., §§ 1, 2, p. 2215.)

If the conveyances are properly recorded, memoranda made by the clerk in the proper places rendering the records intelligible are within the incidental powers conferred by the statute upon the recording officer. In this case a conveyance perfect in form to convey the interests intended to be affected, and unmistakably intelligible in its existing state, properly acknowledged, was delivered to the clerk for the purpose of being recorded.

The omission of that officer to perform his legal duty could not defeat the effect of such a delivery. The parties had done all in their power to make a record of the instrument. The clerk instead of copying the whole conveyance in the records as it was delivered to him, recorded that part only which had not before been recorded, and as to the remainder, referred to it in a memoranda made a part of the record as having been previously recorded in his office in a book and page named. Was this a good record of the instrument? We think it was. If a paper is delivered to a clerk for record, as a duplicate, counterpart or authenticated copy of a paper which has been previously recorded, we see no legal necessity for rewriting the entire paper again in the record. In such a case a memorandum of the application to record, and its identity with a paper previously recorded, referring to the book and page of such record, together with the certificate of the clerk that it was recorded as of the day the application was made, not only satisfies the object of the statute, but is such a memorandum as lies within the scope of the incidental powers conferred upon the clerk to make.

The certificate of the clerk, entered upon the record, makes the entire entry his act, no matter by whom the writing was really performed.

It is provided by sections 24 and 25, chapter 3, part 2 of the Revised Statutes, page 2220, that "every conveyance entitled by law to be recorded shall be recorded in the order and as of the time when the same shall be delivered to the clerk for that purpose, and shall be considered as recorded from the time of such delivery." "The recording officer shall make an entry in the record immediately after the copy of every conveyance recorded, specifying the time of day, month and year when the said conveyance was recorded." The memorandum, containing the time and place of the record of the original lease, is the precise equivalent of a re-recording of it, and there can be no more doubt as to the authenticity of the instrument than, as though it had been re-written, on the day and at the place of the recording of the assignment itself?

In all cases of papers proved by the record, the law makes their authenticity depend upon the certificate of the clerk, vouching for the identity of the record with the original, and no more weight is accorded to the certificate of the clerk in this case than is given to it in any other.

When the clerk certified at the foot of this record that the foregoing was a true copy of the original, the memorandum became a part of his official certificate. He certified in legal effect that the assignment recorded, together with the lease referred to in the memorandum as recorded in deed-book Y Y, page 258, was a copy of the instrument intended to be recorded.

Suppose the clerk had recorded this assignment on one page of the record and the paper attached upon another, no language would appear in the instruments themselves which necessarily identified the one paper as having been written upon the other, any more than in the present case. Yet could it be doubted that the clerk would in that case have authority to certify the fact of the connection of the two papers as they were delivered to him for record?

The official duty, imposed upon the clerk to certify upon the record the time of the day, month and year when a conveyance was recorded, necessarily implies authority to make such entries as will render his certificate intelligible and operative. Such a power no more involves the right on the part of a clerk to construe a conveyance, or give a legal opinion as to its effect, than does the power which he undoubtedly possesses to certify as to the identity of other instruments, which he is usually called upon to exercise. The performance of his uniform clerical duty requires him to compare the instruments which come to his possession for record with the copies made and certify as to the identity of their physical contents. Such a certificate does not involve the expression of an opinion, but calls for the statement of a fact capable of absolute demonstration.

While the method of recording adopted in this case may be unsystematic and inconvenient, it is neither unintelligible nor illegal. This record conveys in intelligible language every fact, essential to be known by persons interested in the subject

conveyed, and complies with the statute requiring the clerk to record conveyances of real estate.

The defendant interposed the further defense to this action that the plaintiff had no title to the premises in dispute, and attempted to support it by reading in evidence a conveyance thereof, made by Rockwell Putnam and Elizabeth his wife to Washington Putnam, dated October 12, 1848.

The findings of the court below show that Rockwell and Washington Putnam, previous to October 12, 1848, were the owners in fee as joint tenants of such parts of lots Nos. 36 and 52 in Saratoga Springs as had not been previously conveyed by them to one John Poussard or passed to Dinnen and Clere under their durable lease. Mutual conveyances appear to have been executed between said joint tenants on the same day describing their joint property.

Washington Putnam and wife executed and delivered to Rockwell Putnam the conveyance hereinbefore described as having been recorded October 16, 1848, and by which they assumed to convey to said Rockwell in fee all of their right, title and interest of, in and to the within lease, and to the premises therein described, and to the rents therein reserved. On the other hand, the same day the said Rockwell Putnam and wife executed and delivered a conveyance to Washington Putnam of an equal undivided moiety of lots Nos. 36 and 52, describing them by metes and bounds, but with the following qualification: "And the said lots Nos. 52 and 36 are hereby conveyed, one equal half thereof subject to a conveyance of part of the same by the said Rockwell and Washington to John Poussard by deed dated October 6, 1843, and subject also to a lease in fee executed by said Washington and Rockwell and their respective wives to John Dinnen and John Clere, dated March 1, 1843, which conveyances and the lands therein conveyed are excepted and reserved from this conveyance."

If we were to consider the single question arising upon this conveyance alone as to whether this exception was not void as being repugnant to the grant, there would be some difficulty perhaps in sustaining it; but in this case we are required to

consider these several conveyances together, as having been simultaneously made, and to give effect to each, if such a construction is possible, under the settled rules of interpretation.

It is indisputable upon the face of the papers that Washington Putnam conveyed his entire interest in the lease to Dinnen and Clere and the lands therein described, by his conveyance to Rockwell, and to suppose that Rockwell reconveyed the same interest immediately back to Washington is to ascribe to the parties the performance of an idle and useless act. The appellants' contention is in effect, that by one conveyance, Rockwell Putnam obtained a moiety of the lands described in the lease, and by the other immediately re-conveyed the same interest to his grantor. This would leave Washington Putnam in possession of the whole joint right of the parties in lots 36 and 52 outside of that covered by this lease, and leave the parties still joint owners as they stood before of the leased land.

It is contrary to accepted rules of construction to nullify a conveyance under such circumstances. The fact that the parties were engaged in the business of severing their joint interests and were perfecting individual rights would seem to suggest that they were engaged in making a division of their joint property, whereby each was to surrender and each to receive something in exchange for such surrender.

The qualification introduced into the deed from Rockwell to Washington purports absolutely to withdraw the property covered by the Dinnen and Clere lease from its operation, and although it might be inoperative as an exception, it is very significant as bearing upon the intention of the parties in executing these apparently conflicting conveyances.

We think the result arrived at by the court below upon this question was correct, and that the circumstances referred to clearly show the intent of the parties to vest in Rockwell the exclusive title to the property conveyed by the Dinnen and Clere lease. The circumstance that no claim was ever made by Washington Putnam or his grantee to the rents in question, and that they were continuously paid by the tenants from Oct. 12, 1848, up to the year 1874 to Rockwell Putnam and his devi-

see seems strongly to support the theory of the execution of mutually operative conveyances.

By this construction both deeds are given an office to perform, and the primary rule that deeds and other contracts should be so construed as to give them effect and uphold them, "*ut res magis valeat, quam pereat,*" can be complied with only by this construction.

The judgment should be affirmed.

All concur, except RAPALLO, J., absent.

Judgment affirmed.