Hatch, J.
The plaintiff heretofore entered into an agreement
in writing with the defendants, whereby he agreed to sell and convey, and they to purchase, a certain piece of real estate situate in the city of Buffalo, which was in said agreement particularly described by metes and bounds. On the execution of the agreement, defendants paid the sum of $2,500, and agreed to pay the remainder of the purchase price, "and secure the same to be paid by their bond and mortgage, payable in five years from date, with semi-annual interest. Plaintiff agreed that the title to the premises should be good and clear in every respect. An abstract of title was thereafter furnished, which showed that the title had been transferred from the state of New York, through various mesne conveyances, by a chain of title perfectly well established in Buffalo, as a good and marketable title, and the same became vested in fee simple absolute in Augustus S. Porter about February 24, 1854. -On or about March 10, 1854, there appears, by records of the county clerk’s office of Brie county, to have been executed a deed by said Porter and Sarah G., his wife, to Jane S. Townsend. This deed purports to be dated March 10, 1854; was acknowledged the same day before Charles H. Symond, justice of the peace; conveys the premises set out in the agreement; and' is spread upon the records in said clerk’s office in Liber 145 of Deeds, at page 400. The record there made shows that the deed was made and executed in Niagara county, where it states the grantor resided, and the records of Niagara county show that Symond was a justice of the peace, duly commissioned and acting on the 10th day of March, 1854. Attached to this deed, as recorded, and immediately following the signature of said justice to the acknowledgement, is a certificate in these words:
“ State of New York, Niagara County Clerk’s Office — ss.: I certify that-, before whom the annexed instrument in writing was proved or acknowledged, was at the time of taking the same a-in and for said county, duly authorized to take the same ; and I am well acquainted with his handwriting, and verily believe the signature to said certificate is genuine, and that the annexed instrument is executed and acknowledged according to the laws of this state. In witness whereof, I have hereunto set my hand and affixed my official seal, at Lockport, in said county, this -day of-, 185-
“ L. S. Payne, Clerk of Niagara County.”
L. S. Payne was clerk of Niagara county during the year 1854. - The record of the deed in the clerk’s office of Brie county does not show that any seal was attached to this certificate by the clerk of Niagara county beyond what the recital of the certificate shows and such record is not dated, and is not signed by the clerk of Brie county. The original of said deed is lost, and cannot now be produced. The further claim of title shows that Daniel J. and Jane S. Townsend, his wife, executed and delivered to James G. *391 Garner a mortgage conveying the premises described in the deed. The same was duly recorded, and was subsequently assigned by James Garner to Daniel R. Mangara, Leonard M. Thorn, and Thomas Garner, who caused the same to be foreclosed, and the premises were sold by the sheriff to Daniel R. Mangam, who received the sheriff’s deed, and thereafter said premises, by various mesne conveyances, became vested in Thomas Garner, all of which duly appears of record; that said Garner, his heirs or devisees, have paid taxes upon the same since March 17, 1864; that the premises have been divided by streets cut through them in various directions; and that whatever fences existed in 1864 inclosing said premises have been destroyed by the cutting through of these streets. During said time, said Garner, his heirs and devisees have rented some poriion for a part of the time and paid taxes, but the premises have not been usually cultivated, and have not been claimed by any person adversely to said persons. This is the state of the title as appears from the abstract. Prior to this submission, plaintiff duly tendered a deed of said premises to defendants, and demanded a fulfillment of the contract upon their part. Defendants refused to accept said deed, or comply with said agreement, upon the ground that said deed did not convey a good and marketable title, for the reason that the certificate of the clerk of Niagara county to the deed before mentioned from Porter and wife to Jane S. Townsend, was and is so defective as to make it not entitled to be recorded in the clerk’s office of Brie county, and for the reason that the said record of said deed is so defective as not to entitle the same, or a certified copy thereof to be used as evidence of the transfer of said premises from Porter and wife to Jane S. Townsend. These objections present the questions to be decided upon this submission.
The certificate attached to the deed omits the name of the justice and his official character, but, when it is read in connection with the certificate of acknowledgement, it becomes clear that the person intended was none other than the magistrate whose name is there signed. That they may be read so together is supported by authority. Lynch v Livingston, 6 N. Y. 433.
The reasons for a construction which will give force and effect to this certificate in this respect are very clearly stated by Judge Finch in Smith v. Boyd, 101 N. Y. 472, and are conclusive in support of the certificate upon this question. With the name and official character of the magistrate supplied, the certificate, so far as its matter is concerned, is in exact compliance with the recording act. 4 Rev. St. (8th ed.) p. 2472, § 18. There is nothing in this section which requires the certificate to be dated, and no reason is suggested why the absence of a date should vitiate it. The date would simply identify the time when it was made, but it would add nothing to the fact that the officer taking the acknowledgment was such officer, and authorized to act* when he assumed to act, and has in fact acted according to law, which are the essential things. The record does not show that the clerk attached to •such certificate bis official seal. But it contains a recital that he had affixed such seal, and nothing contained in the record affirma *392 tively shows that such recital is not true. The question thus presented has been the subject of much debate both in this 'and other states. It is concluded, however, that the question in this state is practically settled by authority.
In Williams v. Sheldon, 10 Wend. 654, record of letters patent did not show that the seal of the state or the signature of the governor was attached thereto when issued. The point raised was stated by the court in these words :
“The question, then, is not whether a patent is valid, and will pass the title to land, if issued without a seal, but whether the fact that in the record of the patent the words ‘L. S.’ do not appear to designate the place of the seal is to be regarded as evidence that the original was not sealed.”
The court held that in so solemn a grant as an original patent to land it would not be presumed that a seal was omitted, but that the presumption was that the officers had done their duty and affixed it. It does not appear in the report of the case that the record showed any recital that the original patent was under seal.
In Todd v. Institution, 118 N. Y. 337 ; 28 St. Rep. 697, the question arose upon .the failure of the record to show that the grantor had sealed the deed; and it was held that the absence of proof that the deed was sealed when delivered made it ineffectual as evidence of the conveyance of title to the premises, and that the record was' essentially defective for purposes of evidence or notice, except as it was notice of the conveyance of an equitable interest. Proof was given in that case that in fact a seal was upon the deed when delivered, and upon this proof it was decided that the record furnished no affirmative evidence of the absence of the seal at the time when the record was made. If the rule be the same respecting official acts, and of recitals in respect thereto, as is applicable to the acts of private persons, and the rule of evidence be the same, then this decision is decisive of the present question respecting the absence of the seal from the record, as the statute requires that the certificate shall be under the hand and official seal of the clerk to entitle the record or transcript thereof to be read in evidence; and here there is no affirmative proof beyond the recital in the certificate that any seal was attached. The deed, in the present case, both in form and execution, is.perfect in every respect. It is the certificate of the clerk that is defective, if there be any defect. When the deed, properly acknowledged, as this deed appears to be, was presented to the clerk of Niagara county for certification, it became his duty to affix his certificate thereto under his hand and official seal.' His failure in this regard would therefore be neglect of duty upon his part. But neglect of duty must be established by proof, as the the maxim “ omnia praesumuntur rite esse acta ” applies to all such acts, and stands as evidence for them. Wood v. Morehouse, 45 N. Y. 368, where the presumption was made that a sheriff had duly posted notices of sale under an execution.
In Lawson v. Pinckney, 40 N. Y. Supr. Ct. 187, it was held that the presumption of the performance of official duty is confined to the act itself; and when the officer is required to do a *393 certain thing, and he certifies that he has done the thing, it will be taken as true.
In Rice v. Davis, 7 Lans. 393, the regularity of proceedings to evidence a redemption from a sheriff’s sale was presumed from the recital in a sheriff's deed.
In Ensign v. McKinney, 30 Hun, 249, the question arose over the execution of a deed by one of the grantors as attorney in fact for the other. It appeared that no power of attorney to this grantor was recorded in the county either before or after the execution of the deed, — nor was it shown that such power of attorney as a written instrument properly executed ever in fact existed ; yet the court held that it would be presumed that “ neither the officer taking the acknowledgment nor the county clerk receiving the deed of record would have verified such official acts, respectively, had there not been present before them legal proof (which in this case would be an instrument in writing, under the hands and seals of the principals) of the existence of such power of attorney.” And the court decided that, upon this presumption, the lapse of time and other dealings by the parties presented a question of fact for the determination of a jury.
Other cases holding a like doctrine are Clute v. Emmerick, 21 Hun, 122; Hartwell v. Roote, 19 Johns. 345; Schermerhorn v. Talman, 14 N. Y. 135; Sloane v. Martin, 24 N. Y. Supp. 661; Hasbrouck v. Burhans, 42 Hun, 376 ; Forsaith v. Clark, 21 N. H. 409.
In Ghurch v. Humphrey, 21 1ST. Y. Supp. 89, it was held that, when the official character of the officer taking the acknowledgment appeared.in the body of the certificate, it was not necessary that it appear in the subscription, thereto.
Coming somewhat closer to the particular question are many cases in other jurisdictions which are quite instructive and convincing.
In Beardsley v. Day, 52 Minn. 451, there was an omission to note upon the record of a sheriff’s certificate of sale that it was sealed. The statute required that the certificate should be executed in due form, under the hand and seal of the sheriff, and that such certificate, when so proved, acknowledged, and recorded, shall, upon the expiration of the time for redemption, operate as a conveyance. The contention was that, as the seal was omitted from the record, it was fatal, and that there was no record to set running the time for redemption. The certificate contained a recital that it was sealed, and the court said :
“The more generally accepted doctrine is that the record is not vitiated or fatally defective by reason of the omission to record the seal, or indicate its presence by some device or attempted description. It is enough that it appear from the record in any other way that the instrument is sealed.”
The court, among others, cites the Todd, Case, as authority for this rule. It is doubtful if the latter goes to the extent claimed for it, as the mention of the recital and its effect is stated in that case in these words:
“That situation was. and without the seal would not have been, *394 consistent with the declaration of the grantor, and of the subscribing witness appearing upon the instrument, to the effect that it was sealed, which, in connection with the fact that, when after-wards found and recorded, a seal was upon it, requires the conclusion that it was sealed at the time of delivery, unless there was some evidence interrupting the way to such conclusion.”
It can be gathered from this language that the court gave some effect to the recital, but scarcely that claimed for it in the Minnesota decision, as the prior statement was that the record was essentially defective for the purpose of supporting the legal title, although the recital was a part. But it does indicate that some effect was given to it, and the Minnesota case carried the doctrine a step further, and, it may be assumed, for the reason that the certificate under consideration was that of a public officer, to which the presumption attached of performance of duty.
A like doctrine is found supported in Starkweather v. Martin, 28 Mich. 471; Geary v. City of Kansas, 61 Mo. 378 ; Hammond v. Gordon, 93 id. 223; Aycock v. Railroad Co., 89 N C. 321; Deans v. Pate, 114 id. 194; Smith v. Dall, 13 Cal. 512. The last decision is overruled in Dutton v. Warschauer, 21 Cal. 609, but not upon this point. Jones v. Martin, 16 Cal. 165; Griffin v. Scheffield, 38 Miss. 359 ; In re Sandilands, L. R. 6 C. P. 411. In the last case it was held that, even though no impression appear upon the parchment or paper indicating it to have been sealed, yet, if it be stated in the attestation clause to have been sealed and delivered, it will, in the absence of evidence to the contrary, be presumed to have been properly sealed. This rule was applied to the instrument itself. The only authority announcing a contrary rule which has fallen under my observation is Switzer v. Knapps, 10 Iowa, 72. This case is sufficiently commenced upon in the Todd Case.
We therefore conclude, as the result of authority, and upon principle, that the recital in the certificate was a full and complete compliance with the statute, and is to be taken as true of the facts which it states, in the absence of affirmative proof to the contrary; that, in the absence of the seal from the record, the presumption obtains, and stands as evidence of the fact,, until overcome by proof, that the clerk attached thereto the official seal, as was his ■duty to do; that the record of itself does not overcome such presumption, and is not affirmative evidence of the fact that the cer-_ tificate was not sealed when delivered to the clerk for record. The' presumption of performance of duty in the present case applies what proof of the fact did in the Todd Case, and makes it an authority for the rule here laid down. The recording act (section 25) requires that the recording officer shall enter upon the record the time of the day, month, .and year when the conveyance was recorded, and shall indorse a certificate containing the same upon the instrument recorded, and also the book and page where the instrument is recorded. This does not appear to have been complied with so far as the record is concerned. This section does not require that the clerk shall sign the record, or that he shall sign the entry of time required to be made. It only requires that he shall make such entry, although it has been assumed that he is re *395 quired to certify. Putnam v. Stewart, 97 N. Y. 418. But the statute does not in terms require it. 4 Rev. St. (8th ed.) p. 2473, § 25. It is evident that the object of this section is to fix the time when the instrument was recorded, in order that rights dependent upon time of record might be determined by evidence practically conclusive. It can have no effect upon the validity of the deed or of its execution, as such matters are made to depend upon other provisions of the statute, nor does it tend in the slightest degree to affect any of such provisions. Its sole object is to register the time of record for the very evident purpose of evidencing priority of rights. No such question arises upon the facts of this case. The question here is upon the effect of the omission upon the record. It is noticeable that in many of the sections requiring certain tilings to be done there is either a penalty provided for the omission of the thing required to be done, or an express prohibition is imposed. Thus, if there be a failure to record, the penalty is that the conveyance shall be void as against subsequent purchasers in" good faith for value, whose conveyance shall be first recorded. When a deed is given as security, the record is made of no advantage unless the defeasance or explanatory instrument is also recorded. Where the acknowledgment is taken out of the county, the certificate must be attached before it can be recorded or read in evidence. Officers are prohibited from taking acknowledgment unless they know the person. As to the requirement of the entry relating to time of record, there is neither penalty nor prohibition; the statute simply directs the thing to be done, and neither by inference nor otherwise does it attach any penalty for failure of observance. It is essentially no part of the conveyance or evidence of its execution, and, as before observed, its essential object seems to be to determine rights where time is the essence of such determination. I think we might well hold that where no such right intervenes, or can intervene, such requirement is to be treated as directory merely, and its omission will not have the effect of vitiating the record as evidence. Wilt v. Cutler, 38 Mich. 196; State v. Ferguson, 31 N. J. Law, 118; Ives v. Kimball, 1 Mich. 308; Miller v. Estill, Meigs, 483.
Assuming, however, that the clerk was bound, as he undoubtedly was, to note the time of record, is the party affected deprived of the right he sought to secure by the neglect of the clerk ? By force of the statute, the record is considered made from the time of delivery of the instrument to the clerk.
In Putnam v. Stewart, it was held that the omission of the clerk to perform his legal duty could not defeat the effect of such delivery. 97 N. Y. 417.
In Manhattan Co. v. Laimbeer, 108 N. Y. 578; 13 St. Rep. 869, the certificate and affidavit required for the formation of a limited partnership were made, and filed with the county clerk, but the certificate was not actually recorded by the clerk, as required by the statute. It was sought to enforce liability against the special partner for such failure, and the court held he was not liable. In speaking of the fact that deeds and other papers are deemed recorded when left with the clerk, the court said :
*396 “ The record is then considered to have been accomplished, and the physical act of transcribing the contents of the paper into a book at length is to be performed by the public officer; and it seeme to me to be contrary to reason and to principle to hold an individual bound to such grave liabilities as this case is an example of, founded upon the failure of a public officer to do an act prescribed by the statute. ”
In speaking of the cases where the individual- has been held bound by the failure of the clerk, of which Frost v. Beekman, 1 Johns. Ch. 288, is an illustration, it was said :
“ It will be noticed that the mortgagee is not liable for the failure of the clerk to record at all, but only for a false record. ”
This case is an instructive case upon the subject of liability and effect of neglect of duty by the recording officer. We can see no reason why the reasoning is not applicable to the case at bar, and .that the penalty for neglect of the clerk to note the time and affix his name to the record cannot be visited upon a party in interest to the extent of destroying such record as evidence of his title.
In Simonson v. Falilee, 25 Hun, 570, there was failure and mistake by the clerk to record the release of a mortgage properly, and the court said of the party affected : “ He is not to be deprived of his property by a failure of the clerk to record the release properly.”
In Insurance Co. v. Dake, 87 N. Y. 257, it was held that failure to index a mortgage did not deprive the mortgagee of priority given him by the recording act. The decision went for the most part upon the ground that the index was not a part of the recording act. The statement with respect to what constituted a perfect record is in these words :
“Whatever forms part of a perfect record, as prescribed in the act, is essential; that is, the conveyance must be recorded in the proper book, in the proper order, and with substantial accuracy. If the record be defective in anything essential, it will not serve the purpose of giving constructive notice to subsequent bona fide grantees or incumbrances.”
And again is quoted with approval the rule laid down in 1 Washb. Real Prop. 578 :
“The proposition is a general one that an irregular registration, of a deed is no notice to others of the existence of such deed ;■ bufan omission of the register to note the time of receiving the deed for record, or to enter it in the index or alphabet, will not invalidate the effect of the registration.”
If it be not essential to note the time when he received it for record, the failure to note such time upon the record is of no higher import. As a fact, it is known that the time stated in the record in usual course corresponds to the time of reception ; yet the actual record is not made until some weeks after, in the orderly course of business. If no minute of the time of reception was made, it might be impossible for the clerk to fix the time of recording. It can scarcely be possible that so grave a penalty as the destruction of a record' for evidence would follow when, if *397 not made at the time of reception, no such penalty would attach. Muehlberger v. Schilling, 19 St. Rep. 1; Bedford v. Tupper, 30 Hun, 174.
Analogous to the rule above stated is Dodge v. Porter, 18 Barb. 193, where the clerk omitted to number a chattel mortgage filed with him, as the statute required. The court said : “ The rights of the mortgagee could not be impaired by the omission to perform the duty.” Bishop v. Cook, 13 Barb. 336; Dikeman v. Puckhafer, 1 Daly, 489.
In Wisconsin the doctrine of the above cases was supported and applied to the omission of the clerk to make the entry and docket a mechanic’s lien as required by the statute. It was then held that, when the claimant has left his lien with the clerk, he has done all he possibly can do to secure his rights, “ and he will not be prejudiced by the neglect of the clerk to perform, in respect to it, his duty as directed by the statute.” Goodman v. Baerlocher, 88 Wis. 293.
This discussion leads us to the conclusion that the omission of the clerk to note the time of recording and signing is not such a departure from the recording act, nor is it so essential to a perfect record, that it will not be received as evidence of the existence of the deed. The record, being admissible as evidence, established, with the other facts, prima facie the delivery of the deed. Geissmann v. Wolf 46 Hun, 289; 11 St. Rep. 306; Townsend v. Rackham, 143 N. Y. 516; 62 St. Rep. 851.
The record which is the subject of this controversy is now over forty years of age. It is evident that the grantee acted upon the grant thus obtained, as she made and executed a mortgage upon the premises ; and, under the judgment of foreclosure which followed, the chain of his title continued, the grantees thereunder having claimed title to the land, received rents from a part of the same, paid taxes, and continually exercised acts of ownership. All of these acts are to be considered, and they bear upon and help out the construction placed upon this record, and require the acts of officers to be liberally interpreted in order to give effect to what the parties have acted upon and apparently intended. Academy v. Kechnie, 19 Hun, 62-68.
It follows from these views that plaintiff should have judgment directing specific performance of the contract.
All concur.