(November 16, 2010)

■ THE BANK OF NEW YORK, Appellant, v OFER RESLES et al., Defendants, and HAMARI VENTURES, LLC, Respondent. [912 NYS2d 35]—

Order, Supreme Court, New York County (Walter B. Tolub, J.), entered January 21, 2009, which granted the motion of defendant Hamari Ventures, LLC, for a determination that its mortgage takes precedence over plaintiff's mortgage, and ordered the sale of the mortgaged property to proceed, unanimously reversed, on the law, with costs, and the motion denied.

A summary of the odd procedural history of this foreclosure action is appropriate. Plaintiff Bank of New York (BONY) commenced an action to foreclose on two mortgages on a condominium apartment (the property) that were executed by the property's owner, defendant Resles. The first of these mortgages (the first mortgage) was in the amount of $225,000, made in favor of Madison Home Equities, executed on April 12, 2004, recorded on June 1, 2004, and assigned on November 3, 2004 to

Countrywide Home Loans, Inc. (Countrywide). Resles then executed a second mortgage on the property to Countrywide (the second mortgage) on November 3, 2004 in the amount of $215,000, which was not recorded until nearly a year later, on August 9, 2005, and was consolidated with Countrywide's first mortgage that same day.

On April 18, 2006, the consolidated mortgage was assigned to BONY and BONY commenced this foreclosure action that same day. Hamari Ventures, LLC (Hamari) was named as a defendant because it also held a mortgage on the property. Hamari's mortgage was in the amount of $150,000, executed by Resles on May 5, 2005, and recorded on July 1, 2005, five weeks before the second mortgage was recorded.

None of the defendants, Hamari included, answered BONY's summons and complaint. A judgment of foreclosure and sale was accordingly entered on May 17, 2007, awarding plaintiff $465,924.01 plus costs and interests, that is, an amount covering the full amount of the first and second mortgages. A public auction was held on September 12, 2007, at which a bid for the property of $523,000 was accepted.

Thereafter, Hamari appeared in the action, and on October 9, 2007, moved by order to show cause to enjoin the closing of the sale pending a direction that funds from the sale be paid to it as the holder of what it claimed was the second mortgage on the property.

Although Hamari did not explicitly ask for vacatur of the default judgment, the parties treated the order to show cause as a motion to vacate. Similarly, the order determining that motion, the order from which BONY appeals, does not explicitly address vacatur, although it implicitly vacates the default judgment by modifying it, i.e., by determining that Hamari's mortgage takes precedence over the second mortgage and by directing that the closing proceed and that payment to Hamari be made in accordance with its mortgage from the funds remaining after the satisfaction of the first mortgage.

Because both the parties and Supreme Court treated Hamari's order to show cause as a motion to vacate the default judgment, we will do the same. The governing law is clear: a defendant seeking to vacate a default is required to demonstrate both a reasonable excuse for the delay in appearing and answering the complaint and a potentially meritorious defense to the action (CPLR 5015 [a] [1]; *Eugene Di Lorenzo, Inc. v A.C. Dutton Lbr. Co.*, 67 NY2d 138, 141 [1986]). We need not reach the issue of reasonable excuse because Hamari failed to show a meritorious defense.

The funds realized from a sale of foreclosed property are used to satisfy liens in the order that the lien holders recorded their liens; thus, Hamari's mortgage would have precedence over the second mortgage if Hamari's mortgage was recorded before the second mortgage (see Real Property Law § 291). Additionally, Real Property Law § 317 provides: "Every instrument, entitled to be recorded, must be recorded by the recording officer in the order and as of the time of its delivery to him therefor, and is considered recorded from the time of such delivery." Thus, provided that it is entitled to be recorded, an instrument is deemed recorded from the time it is delivered to the clerk for recording. When a party establishes that an instrument was entitled to be recorded and was delivered, subsequent lienholders are deemed to have constructive notice of the first-delivered lien (see Homeowners Loan Corp. v Recckio, 45 AD3d 1322 [2007]; NYCTL 1998-1 Trust v Ibrahiem, 15 Misc 3d 294 [2007]).

The City Registrar does not date stamp or otherwise record the time of delivery of mortgages submitted for recording. At the hearing, BONY adduced the following evidence that the second mortgage was delivered to the Registrar on or about June 10, 2005: the cover sheet prepared by Countrywide's title agency, dated June 9, 2005; and the check for payment of fees associated with the registration of the second mortgage, dated June 10, 2005, stamped by the City as received on the same date, stamped with an endorsement by the City on June 13, 2005, and paid on June 15, 2005. The hearing evidence also established that Hamari's cover sheet was dated June 16, 2005, and that its check was dated June 28, 2005, stamped with an endorsement by the City on July 1, 2005, and paid on July 5, 2005. On this evidence, it is clear that the second mortgage was delivered no later than June 15, 2005, i.e., before Hamari's mortgage, and Hamari does not contend otherwise.

Thus, the only remaining issue is whether the second mortgage was entitled to be recorded when it was delivered. Hamari failed to elicit any evidence of a defect in the second mortgage. Indeed, its expert witness conceded that the Registrar's system automatically updates the preparation date when the cover sheet is modified. Accordingly, the preparation date of June 9, 2005 indicates that the Registrar did not subsequently ask for changes in the submitted documents. The absence of any reason to believe that the second mortgage was defective is sufficient to meet BONY's burden of showing that the second mortgage was entitled to be recorded when it was delivered.

Consistent with its inability to find a defect in the second mortgage submission, Hamari does not argue on appeal that the

second mortgage was not entitled to be recorded. Instead, Hamari's sole argument on appeal is that Real Property Law § 317 should be read as applying only in cases where clerical error can be shown. However, no case applying Real Property Law § 317 so holds. The most that could be said is that it may be that no case expressly rejects Hamari's reading of the statute. In any event, Hamari's reading of the statute is at odds with the unqualified language of the final clause, which sweepingly provides that every instrument that is entitled to be recorded "is considered recorded from the time of such delivery." Accordingly, Hamari's reading must be rejected because a requirement that clerical error be shown entails reading into Real Property Law § 317 words that the Legislature did not see fit to include (see Matter of Chemical Specialties Mfrs. Assn. v Jorling, 85 NY2d 382, 394 [1995]).

As Hamari failed to show a meritorious defense justifying vacatur of the default judgment, its motion should have been denied, and the proceeds of the foreclosure sale should be used to satisfy the first and the second mortgages before any remaining funds are made available to satisfy Hamari's mortgage. Concur—Gonzalez, P.J., Saxe, McGuire, Manzanet-Daniels and Román, JJ.